UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHON LEE MARTIN,

        Petitioner,                         Case Number 16-12124
                                                           Honorable David M. Lawson
v.

RANDEE REWERTS,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jonathon Lee Martin carjacked a 2005 Pontiac Grand Prix from a mother and her four-year-old son in Detroit on April 10, 2013. He was apprehended that same day and ultimately brought to trial, where a jury convicted him of the offenses. He challenges those convictions in a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, alleging a variety of grounds relating to the identification evidence, an alibi witness, and his lawyer's performance. Finding no merit to his claims, the Court will deny the petition.

I.

The facts were summarized by the Michigan Court of Appeals in its opinion on direct appeal as follows:

> Defendant carjacked a mother and her four-year-old son in the middle of the afternoon outside a dollar store in Detroit. As she returned to her car, which was parked on a side street, the victim saw defendant, who was wearing a black hooded sweatshirt, emerge from a nearby vacant building. Defendant then approached defendant (sic), told her "B, you know what it is," entered her car, and sat in the driver's seat. The victim handed her money to defendant through the passenger side window, and he ordered her to give him her car keys, which she did. In the process of so doing, the victim was face-to-face with defendant, and saw that he had a black handgun in the pocket of his hooded sweatshirt.
>
> Soon after he committed the carjacking, the police saw defendant — still wearing a black hooded sweatshirt — driving the victim's stolen car, with two passengers.

> After police attempted to stop the vehicle, defendant and the passengers fled on foot. The police apprehended defendant 10 minutes later, and found a black handgun near the garage where defendant was hiding.

*People v. Martin*, No. 320937, 2015 WL 4465190, at *1 (Mich. Ct. App. July 21, 2015).

Two witnesses testified at Martin's trial: the victim and the petitioner himself. The victim identified Martin at a pretrial lineup and in the courtroom. Many facts were furnished by stipulation.

The Wayne County, Michigan circuit court sitting without a jury found Martin guilty of carjacking, unlawful driving away an automobile, and possession of a firearm during the commission of a felony, and he was sentenced to prison, where he remains.

The Michigan Court of Appeals affirmed the petitioner's convictions, *ibid.*, and the Michigan Supreme Court denied leave to appeal, *People v. Martin*, 499 Mich. 857, 873 N.W.2d 584 (2016). The court of appeals reviewed some of Martin's claims under a plain error standard because he failed to preserve the issues as constitutional claims at the trial court level. AEDPA deference applies to those claims here. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The petitioner filed a timely petition in this Court for a writ of habeas corpus, in which he raised the following issues:

> I. Mr. Martin was denied his state and federal constitutional right to a fair trial and impartial trial due to the inherent fallibility of the eyewitness identification evidence presented at his trial.
>
> II. Mr. Martin's case was unduly prejudiced by the prosecutor's questioning as to the absence of his alibi witness.
>
> III. There was insufficient evidence for the trier of fact to conclude beyond a reasonable doubt that defendant committed [the] crime of car jacking, unlawful driving away of a motor vehicle and felony-firearm due to the fact that because of

a actually erroneous stipulation by the parties that the arrest occurred on April 11, 2013 (when in fact according to police reports it actually occurred on April 10, 2013, the same day as the crime) there was thus no prosecution evidence on the record to support the prosecution's claim concerning the factual circumstances of Mr. Martin's arrest.

IV. Defendant's pre-trial line-up was unconstitutional where the totality of circumstances including the victim being allowed to see the video at the scene of the crime, and the fact that a detective called the victim and told her that they had caught the person who robbed-carjacked her, established that the line-up was impermissibly suggestive in violation of defendant's due process rights.

V. Defendant was denied his state and federal constitutional right to effective assistance of counsel under the [S]ixth [A]mendment where (1) counsel failed to object to the identification line-up; and (2) for counsel failing to file a notice of alibi witness or call interview alibi witness.

Pet. at 8, 10, 12, 14, 20, ECF No. 1, PageID.8, 10, 12, 14, 20.

The respondent filed an answer to the petition arguing that some of Martin's claims are subject to the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]"

the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Martin filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes

were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Leonard v. Warden Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

In his first claim, Martin alleges that the eyewitness identification was inherently unreliable, and in his fourth claim alleges that the pre-trial line-up was impermissibly suggestive. The state court of appeals did not think much of the claims, rejecting with these words:

> Here, the victim testified that she saw defendant "face-to-face" for an extended period of time as he took her money and stole her car. Defendant has utterly failed to explain why this testimony should not be admitted, other than voice his inaccurate belief that eyewitness identification testimony is inadmissible.

*Martin*, 2015 WL 4465190, at *2.

The Due Process Clause requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). A pretrial identification prpcedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972);

*Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967). A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* at 240 n.31. If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Martin argues that the line-up was suggestive because the complainant viewed a video of the actual carjacking before the line-up, giving her an opportunity to solidify her identification. But there is nothing about that procedure that might lead to misidentification. "[L]ittle possibility of misidentification arises from the use of photographs depicting 'the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the [crime].'" *United States v. Monks*, 774 F.2d 945, 957 (9th Cir. 1985) (quoting *United States v. Evans*, 484 F.2d 1178, 1186 (2d Cir. 1973)). In *Evans*, the court made the logical point that refreshing a witness's memory using the surveillance video of the actual crime runs "a significantly smaller risk of misidentification than to refresh it from a source unrelated to the actual events." *Evans,* 484 F.2d at 1186 (citing *United States v. Mackey*, 474 F.2d 55 (4th Cir. 1073)).

In this case, no impermissible suggestion resulted from the victim's viewing a video taken of the petitioner during the commission of the carjacking. *See United States v. Bridgefourth*, 538 F.2d 1251, 1253 (6th Cir. 1976); *see also United States v. Peterson*, 411 F. App'x 857, 865 (6th Cir. 2011) (police officer's inquiry whether eyewitness could identify bank robber from photo array was not unduly suggestive, in violation of defendant's due process rights, even if witness viewed photographs of robber in newspaper before identification; photograph of robber in newspaper was taken from bank's security camera during commission of robbery and would have been no different than what witness saw at bank).

Nor is there anything faulty about the lineup procedure. The victim testified that she came to the police station for the lineup, unaware that the police had apprehended the perpetrator. A defense attorney was present at the time of the lineup and the police did not suggest who she should pick or identify. It took the complainant "[m]aybe less than a minute" to identify the petitioner. Trial Tr. at 13, ECF No. 7-4, PageID.213. The photo array of the lineup was entered into evidence during petitioner's trial.

Martin contends that the line-up was unduly suggestive, but he fails to explain why, and he has not submitted any evidence to support his claim. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (holding that bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding). The petitioner is not entitled to habeas relief based on any irregularity in the pretrial identification procedures.

The Michigan Court of Appeals properly rejected Martin's claim that the eyewitness identification given at his trial was unreliable and inadmissible. In this Court, he bases that claim on information that the victim stated during a news report that she did not see the face of the perpetrator. Martin asks this Court to take judicial notice of a local TV news interview that took place following the carjacking. That news report is not part of the record, and Martin has not given cause for the Court to expand the record. *See* 28 U.S.C. § 2254(e)(2); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

In addition, there were two perpetrators involved in the carjacking. The victim apparently could not identify the second perpetrator, who was not apprehended. But she was face-to-face with Martin during the carjacking. She provided the police with a statement describing the carjacker as 18 to 21 years old, baby-faced, a little taller than herself, with brown skin, weighing about 160 pounds, and wearing a black hooded sweatshirt with a white "V" on it and black sweatpants. The victim testified numerous times that she was looking at her assailant's face and that she was sure that petitioner was one of the perpetrators involved in the carjacking. These factors all support a finding that an independent basis existed for the victim's in-court identification of the petitioner. *See Robertson v. Abramajtys*, 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001). It is appropriate to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard*, 405 F.3d at 473; *see also United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun).

The victim testified that she saw a man approach from an abandoned building located across the street and then later saw the same man sitting in the driver's seat of her car, demanding her money and car keys. It makes sense that she paid a great deal of attention to her assailant. She testified without equivocation that the petitioner was her assailant. *Howard*, 405 F.3d at 473. On the issue of identification, no due process violation occurred. The state courts correctly decided the issue.

B.

Martin next argues that his bench trial was unfair because the prosecutor cross-examined him about why he failed to contact his alibi witness so that she could testify at trial. Again, the state court of appeals made short work of that argument:

> Here, defendant testified on direct examination that he did not commit the charged crimes because he was at a friend's house on the date of the carjacking. On cross-examination, the prosecution questioned defendant regarding this alibi, and asked why defendant had not produced his friend as a witness to corroborate this story. These questions are perfectly proper — the prosecution merely questioned defendant about a theory he advanced that he claimed proved his innocence. Far from constituting misconduct, this behavior is exactly what is expected of a prosecutor conducting a rigorous cross-examination.

*Martin*, 2015 WL 4465190, at *2.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). To obtain relief, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Martin has not come close to meeting that standard. A prosecutor's comment on a defendant's failure to call alibi witnesses is not impermissible as long as the prosecutor does not suggest that the defendant has the burden of proving his innocence, but merely argues that the failure to produce an alibi witness undermines the defendant's alibi defense. *See Perkins v. McKee*, 411 F. App'x 822, 832-33 (6th Cir. 2011). No such suggestion was made here. The examination consisted of the following exchange:

> Q And whose house were you at that you got picked up from?
> A Excuse me?
> Q You said you were at a friend's house?
> A Yes, sir, Sierra.
> Q Sierra?
> A Yes, sir.
> Q Is she going to testify today?
> A No, sir.
> Q No? Why not?
> A I never got in contact with her, sir.
> Q This is a pretty important issue, don't you think?
> A Yes, sir.
> Q You didn't bother to contact her?
> A I mean, I gave my attorney her number to get in contact with her, she be my alibi.
> MR. DOHERTY [the prosecutor]: I have no further questions.

Trial Tr. at 30, ECF No. 7-4, PageID.230.

It also is worth mentioning that Martin was convicted at a bench trial. Federal courts presume that a judge, as the trier of fact, "can readily identify credible evidence . . . give proper weight to the evidence . . . and understand what law is relevant to his or her deliberations." *Hill v. Anderson*, 881 F.3d 483, 510 (6th Cir. 2018) (citations omitted).

Martin is not entitled to relief on his prosecutorial misconduct claim because the prosecutor did not commit misconduct by cross-examining the petitioner on a defense theory that he advanced, Martin has presented no evidence that the judge who tried his case "was incapable of

-10-

discerning what constitutes admissible evidence and parsing such evidence out from any inflammatory or irrelevant comments by the prosecutor." *Ibid.*

C.

Martin next argues here, as he did in the state court of appeals, that the evidence presented was insufficient for a rational trier of fact to find beyond a reasonable doubt that he was the one who committed the carjacking. He says that the prosecutor and his lawyer stipulated in error that he was arrested on April 11, 2013, when in fact the police report indicates that the carjacking occurred on April 10, 2013. Martin reasons, therefore, that his conviction is based on insufficient evidence because the stipulation did not specify any events that occurred on April 10, 2013.

The Michigan Court of Appeals dismissed this argument out of hand, relegating the discussion to a footnote:

> Defendant's insufficiency of evidence claim is particularly frivolous. Specifically, he avers that because he supposedly erred when he stipulated to his arrest on April 11, 2013, his convictions are unsupported by sufficient evidence. Defendant fails to explain how this "incorrect" stipulation—the "incorrectness" of which is not supported by evidence in the record—necessarily indicates that the prosecution presented insufficient evidence to sustain his convictions. This is likely because such an assertion is flatly contradicted by the record, which contains a number of facts that support defendant's convictions: (1) the victim's eyewitness testimony that defendant stole her money and carjacked her while carrying a firearm; (2) the police observed defendant driving the victim's stolen vehicle; (3) defendant fled from the police after a traffic stop; (4) after about 10 minutes, the police discovered defendant hiding in a garage; (5) a black handgun matching the description given by the victim was found near the scene of defendant's arrest; and (6) defendant's unconvincing testimony that he was at an unidentified friend's house during the carjacking incident.

*Martin*, 2015 WL 4465190, at *1 n.2.

After reviewing the record, it is difficult to quarrel with that reasoning. Certainly, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). And on direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review — as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The only element of the crimes Martin contests is his complicity, which, of course, is essential. *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008) (holding that "it is well settled that identity is an element of every offense") (citing *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967)). But the only way this Court could upset the trial court's finding on that element is to declare the victim's testimony incredible. That proposition is a non-starter. A federal habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not

affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). Because it is well established, therefore, that a victim's testimony alone can be constitutionally sufficient to sustain a conviction, s*ee Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases), Martin's sufficiency-of-evidence claim fails.

D.

In two separately denominated claims, Martin argues that his trial counsel was constitutionally ineffective. He alleges deficient performance where counsel failed to challenge the line-up as being unduly suggestive and by failing to call an alibi witness on his behalf, and he says that trial counsel was ineffective for failing to object to the victim's pre-trial or in-court identification of him as her assailant. The state court of appeals rejected these claims, once again in a footnote. *Martin*, 2015 WL 4465190, at *1 n.3.

A violation of the Sixth Amendment right to the effective assistance of counsel is established when an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

As noted above, the lineup procedure was not unduly suggestive. A defense lawyer cannot be faulted for not moving to challenge an identification procedure that was proper. *See Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

The failure to call a known alibi witness can constitute ineffective assistance of counsel. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). But here, except Martin's testimony at trial that he was at the house of a friend named "Sierra" at the time of the carjacking, he has not supplied to this Court, to the state courts, or, as far as the record reflects, to his own attorney, the full name of his alibi witness. Nor has Martin attached any affidavit from "Sierra" to any filing in the state court or here that might enlighten the record as to "Sierra's" proposed testimony or her willingness to testify on Martin's behalf. With just those bald conclusions, Martin cannot show that his attorney performed deficiently by not ferreting out this phantom alibi witness. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). And without some showing of how the

witness might have helped the defense or made a difference in the case, Martin cannot establish prejudice. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Finally, there is no support in the record for the idea that the victim's in-court identification was subject to challenge beyond the cross-examination that defense counsel conducted. Certainly, there was no cause to move pretrial to suppress it. Defense counsel cannot be deemed ineffective for failing to make futile or meritless motions. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014).

The state court's disposition of Martin's ineffective-assistance-of-counsel claims did not contravene or unreasonably apply federal constitutional law.

### III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Date: July 12, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 12, 2019.

                            s/Deborah Tofil
                            DEBORAH TOFIL